Argued and submitted January 2, affirmed August 13, petition for review allowed December 24, 2008 (345 Or 503)

Jessica VOGELIN,
*Plaintiff-Appellant,*
*v.*
AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
*Defendant-Respondent.*

Multnomah County Circuit Court
050201571; A132051

191 P3d 687

Kathryn H. Clarke argued the cause for appellant. With her on the briefs was Steven A. Kahn.

Thomas M. Christ argued the cause for respondent. With him on the brief were Brian J. Scott and Cosgrave Vergeer Kester LLP.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ARMSTRONG, J.

**ARMSTRONG, J.**

Plaintiff was injured in an automobile accident and filed an action against defendant to recover underinsured motorist (UIM) benefits allegedly due her under her insurance policy with defendant. The issue on appeal concerns the calculation of the UIM benefits due plaintiff. The specific question presented is this: When an insured's damages exceed both the amount recovered from the tortfeasor's liability insurance and the uninsured motorist (UM) limit of the insured's policy, are UIM benefits calculated by subtracting the amount received from the tortfeasor's liability insurance from (a) the insured's damages or (b) the insured's UM policy limits? As explained below, we conclude that the answer is (b). Accordingly, we affirm.

The relevant facts are undisputed. Plaintiff was injured when she was hit by a car driven by James. Plaintiff recovered from James the policy limit of his liability insurance, which was $25,000. She then made a claim for UIM benefits under her insurance policy with defendant; that policy has a limit of $100,000 for UM/UIM benefits. Defendant denied plaintiff's claim, and she brought this action for breach of contract seeking judgment against defendant for UIM benefits in the amount of $100,000. A jury determined that plaintiff had sustained over $300,000 in damages from the accident.

Following the jury's verdict, the trial court held a hearing to determine the amount of the judgment to be entered. Plaintiff contended that the $25,000 paid on behalf of James should be deducted from her total damages— $304,035.70—and that she should be awarded the remainder, up to the limit of her UIM policy, in other words, $100,000, plus costs and attorney fees. Defendant argued that the $25,000 payment should be deducted from the policy limits of plaintiff's UM insurance, rather than from plaintiff's damages, resulting in an award of $75,000, plus costs and fees. The trial court agreed with defendant and entered judgment for plaintiff in the amount of $75,000, plus costs and fees. Plaintiff appeals that judgment.

On appeal, plaintiff argues that ORS 742.504(7)(c)[1] and the Supreme Court's interpretation of it in *Bergmann v. Hutton*, 337 Or 596, 101 P3d 353 (2004), compel the conclusion that the UIM benefits due plaintiff are to be calculated by subtracting the tortfeasor's payment from the plaintiff's damages and awarding the difference, up to the UM limit.[2] Defendant responds that ORS 742.502(2)(a), rather than ORS 742.504(7)(c), controls, and, under the formula set forth in that statute, when the insured's damages exceed the UM limit, payment by the tortfeasor's liability insurance is to be deducted from the UM limit rather than from the insured's damages, just as the trial court held. Defendant also argues that the legislative history of ORS 742.502(2)(a) confirms that analysis.

The resolution of the case thus involves the interpretation of two interrelated statutes, ORS 742.502(2)(a) and ORS 742.504(7)(c). ORS 742.504(7)(c) provides:

"Any amount payable under the terms of this coverage because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by:

"(A)   All sums paid on account of such bodily injury by or on behalf of the owner or operator of the uninsured vehicle and by or on behalf of any other person or organization jointly or severally liable together with owner or operator for such bodily injury including all sums paid under the bodily injury liability coverage of the policy; and

"(B)   The amount paid and the present value of all amounts payable on account of such bodily injury under any workers' compensation law, disability benefits law or any similar law."

---

[1] Unless otherwise noted, all citations to ORS chapter 742 are to the 2001 versions of the statutes. The relevant statutes have since been amended.

[2] Under the relevant statutes, UIM coverage is defined in terms of UM coverage. Consequently, if incongruously, we will often refer in this opinion to UM coverage when describing or discussing UIM coverage. We hope that readers will not be confused.

According to plaintiff, resolution of the issue in this case turns on the meaning of the phrase "[a]ny amount payable under the terms of this coverage," which the Supreme Court construed in *Bergmann*. The question in *Bergmann* was whether the defendant insurer was entitled to offset the plaintiff's workers' compensation benefits from the amounts that the insurer was otherwise obligated to pay the plaintiff under the UIM provisions of her insurance policy or, rather, whether those benefits were to be deducted from the plaintiff's total damages, a higher amount.[3] 337 Or at 602-03.

The court first noted that the phrase "this coverage," as used in ORS 742.504(7)(c), refers to both UM coverage and, in the appropriate case (by virtue of ORS 742.502(4), which specifies that UIM coverage is subject to ORS 742.504), to UIM overage. *Id.* at 604. The court distinguished between the term "coverage" as used in ORS 742.504(7)(c) and the term "policy," concluding that the former is a broad term encompassing "the universe of people, vehicles, and events that trigger the insurer's obligation to pay under the policy" whereas the latter is "the specific contract between the insurer and the insured[.]" *Id.* Noting that the terms of a policy include limits on the insurer's liability, but the terms of coverage do not, the court concluded that the phrase "any amount payable under the terms of this coverage" in ORS 742.504(7)(c) means

> "the amount that the insured legally would be entitled to recover from the owner or operator of an uninsured or underinsured vehicle on account of bodily injury sustained by the insured in an accident caused by the ownership or operation of the uninsured or underinsured vehicle."

*Id.* at 610. In the usual case, the court observed, "that amount would be equal to the insured's total damages[.]" *Id.* at 605. The court thus held that the workers' compensation benefits received by the plaintiff should have been applied against the total amount of damages that the plaintiff legally would have

---

[3] Although the defendant insurance company—which insured both the tortfeasor *and* the plaintiff—had also tendered to the plaintiff an amount equal to the limits of the tortfeasor's liability insurance, the plaintiff apparently did not contend that that amount was also to be deducted from her damages rather than from the limits of her UIM policy. *Bergmann*, 337 Or at 603 n 7.

been entitled to receive from the tortfeasor because of the bodily injuries that she sustained in the accident. *Id.* at 610.

According to plaintiff, *Bergmann* established that ORS 742.504(7)(c) is the statute that governs the calculation of UM/UIM benefits for most purposes, and, under that statute, deductions for payments from any source are made from an insured's damages rather than from the insured's UM/UIM policy limits. Defendant disagrees. It contends that the provisions of ORS 742.504—including ORS 742.504(7)(c)—apply only to the extent that they are not inconsistent with ORS 742.502, which creates and defines UIM coverage. We turn to that statute.

Subsection (1) of ORS 742.502 requires that all motor vehicle liability policies in Oregon provide UM coverage. Subsection (2)(a) then requires the inclusion of UIM coverage in any policy providing for UM coverage in excess of the financial responsibility limits and, according to defendant, provides the formula under which UIM benefits are to be calculated. It provides, in full:

> "A motor vehicle bodily injury liability policy shall have the same limits for uninsured motorist coverage as for bodily injury liability coverage unless a named insured in writing elects lower limits. The insured may not elect limits lower than the amounts prescribed to meet the requirements of ORS 806.070 for bodily injury or death. Uninsured motorist coverage larger than the amounts required by ORS 806.070 shall include underinsurance coverage for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than the insured's uninsured motorist coverage. *Underinsurance benefits shall be equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability insurance policies.*"

ORS 742.502(2)(a) (emphasis added).

In defendant's view, the phrase "uninsured motorist coverage benefits" in the fourth, italicized sentence, refers to the amount recoverable in a UM case, that is, the amount of UM benefits that the insured would recover if the tortfeasor had no insurance at all. In a case (such as this one) where the

damages exceed the UM limit, the UM benefits equal the UM limit and, thus, defendant asserts, "the UIM benefits equal [the UM] limit minus the payment [under the tortfeasor's liability insurance policy]—*not* the damages minus the payment." (Emphasis in original.) According to defendant, it would be "inconsistent with ORS 742.502(2)(a) to deduct the tortfeasor's payment from the insured's damages rather than [from] the UM limit when calculating UIM benefits in cases involving above-limit damages."

We agree with defendant. After this case was briefed and argued, the Supreme Court decided *Mid-Century Ins. Co. v. Perkins*, 344 Or 196, 179 P3d 633 (2008), which informs our analysis. The issue presented in the consolidated cases in *Perkins* was whether a tortfeasor who causes an insured's injuries is an "underinsured" motorist, such that the insured is entitled to UIM benefits under his or her UIM policy, when the limit of that policy is equal to the other motorist's liability policy limit but the insured's damages exceed the other motorist's policy limit. 344 Or at 203. The insureds contended that a "motorist is underinsured if the limit of his or her liability policy is less than the sum of the *damages* sustained by the insured." *Id.* at 206 (emphasis added). The insurers, on the other hand, contended that the determination is made by comparing the limits of the tortfeasor's liability policy to the limits of the insured's UM policy; by the insurer's reasoning, if the limits are equal, as they were in *Perkins*, then the tortfeasor is not an underinsured motorist and, thus, the insured is not entitled to recover UIM benefits. *Id.* at 207.

In resolving the question, the Supreme Court focused on the third sentence of ORS 742.502(2)(a).[4] It provides that UIM coverage is triggered by damages or death caused by accidents with motor vehicles that are insured for less than "the insured's uninsured motorist coverage." The court rejected the insureds' argument that, under *Bergmann*, the term "coverage" in that phrase must refer to an insured's

---

[4] To reiterate, the third sentence of ORS 742.502(2)(a) states:

"Uninsured motorist coverage larger than the amounts required by ORS 806.070 shall include underinsurance coverage for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than the insured's uninsured motorist coverage."

damages without reference to the insured's limits of liability. *Id.* at 209. In doing so, the court noted that it is not bound by the assumption that the legislature intended the same word to have the same meaning in related statutory provisions if the text and context of the statute indicate otherwise. *Id.* at 211. The court also clarified that *Bergmann* did not define coverage as damages, stating that "[n]othing in [*Bergmann*] indicates that 'coverage' refers only to the *amount* that the insurer is obligated to pay." *Id.* at 212 (emphasis in original). After examining the statutory text surrounding the phrase at issue, as well as related statutes that also employ "limits-to-limits" comparisons, the court concluded that the phrase "uninsured motorist coverage" in the third sentence of ORS 742.502(2)(a) refers to the insured's uninsured motorist coverage as the policy terms limit *that* coverage. *Id.* at 214. Thus, the court held that the threshold question of whether a vehicle is underinsured is determined by comparing the liability limits of the vehicle's insurance against the limits of the insured's UM coverage, rather than against the insured's damages.

Significantly, in reaching that conclusion, the court also disagreed with the insureds that such an interpretation sets up an inconsistency between ORS 742.502(2)(a) and ORS 742.504(7)(c) as interpreted in *Bergmann*. The court explained:

> "ORS 742.502(2)(a) establishes that, regardless of an insured's actual damages, the insurer's liability will never exceed an amount totaling the *benefits available under uninsured motorist coverage, i.e., the policy limit, minus the amount that the insured recovers from other policies*. In other words, UIM benefits are intended to fill the gap between the limit of an insured's UM coverage and the amount that he or she actually receives from another motorist."

*Perkins*, 344 Or at 217 (emphasis added).

Although the just-quoted discussion of ORS 742.502(2)(a) did not directly compel the result in *Perkins*, and thus is technically *dictum*, we will not disregard it. The court left no doubt that the phrase "uninsured motorist coverage benefits" as used in the fourth sentence of ORS

742.502(2)(a) means the UM policy limit and, consequently, that the amount of UIM benefits due an insured is calculated by subtracting from that limit the "amount that the insured recovers from other policies."[5] Here, plaintiff's UM policy limit was $100,000. She recovered $25,000 from the tortfeasor's liability insurance policy. Thus, she was entitled to receive UIM benefits from defendant in the amount of $75,000. The trial court did not err.

Affirmed.

---

[5] Ultimately, as *Perkins* indicates, the hurdle that plaintiff's proposed interpretation cannot overcome is the language in the fourth sentence of ORS 742.502(2)(a), which states that an insured's UIM benefit is the amount of the insured's UM benefit, less the amount received "from other automobile liability insurance policies." The policy limit of plaintiff's UM/UIM coverage is $100,000, so her maximum *UM* benefit is $100,000. In light of the fourth sentence of ORS 742.502(2)(a), her *UIM* benefit is that amount less the $25,000 that she received from the tortfeasor's liability insurance, that is, $75,000.